## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHILIP HALPERT, derivatively on<br>behalf of ASIAINFO-LINKAGE, INC, )<br><br>Plaintiff, )<br><br>v. )<br><br>STEVE ZHANG, JIAN DING, LIBIN )<br>SUN, SEAN SHAO, YUNGANG LU, )<br>DAVIN A. MACKENZIE, THOMAS J. )<br>MANNING, SUNING TIAN, XIWEI )<br>HUANG, and GUOXIANG LIU, )<br><br>Defendants, )<br><br>and )<br><br>ASIAINFO-LINKAGE, INC., a Delaware )<br>Corporation, )<br><br>Nominal Defendant. )<br> ) | Civ. No. 12-1339-SLR |

Brian E. Farnan, Esquire of Farnan LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Eduard Korsinsky, Esquire, and Steven J. Purcell, Esquire of Levi & Korsinsky, LLP.

Arthur Dent, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: David H. Kistenbroker, Esquire, Joni S. Jacobsen, Esquire, and Angela M. Liu, Esquire of Dechert LLP.

## **MEMORANDUM OPINION**

Dated: August 1 , 2013
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff Philip Halpert ("Halpert"), as a shareholder, brings this action derivatively on behalf of AsiaInfo-Linkage, Inc. ("AsiaInfo"), a Delaware corporation that sells telecommunications software and information technology. (D.I. 1 at ¶¶ 10, 33) Halpert alleges demand futility, a breach of fiduciary duty, waste of corporate assets, and unjust enrichment against defendants, who include the members of AsiaInfo's board of directors and some of AsiaInfo's executives. (*Id.* at ¶¶ 37, 45, 51, 56) Specifically, Halpert alleges that defendants knowingly violated the terms of a shareholder-approved 2011 Stock Incentive Plan ("the Plan"), which limited the number of stock options granted as "performance-based compensation" to 100,000 per year per recipient. (*Id.* at ¶¶ 29, 30) Under this supposed abuse of authority, defendant Steve Zhang ("Zhang"), an officer and director of AsiaInfo, received 750,000 stock options and defendant Guoxiang Liu ("Liu"), an officer of AsiaInfo, received 110,000 stock options. (*Id.* at ¶ 30) Halpert requests damages, injunctive relief, and rescission of the excess stock options, as well as corrective measures. (*Id.* at ¶¶ A, B, C)

Currently before the court is defendants' motion to dismiss under Federal Rules of Civil Procedure 23.1 and 12(b)(6).[1] (D.I. 10) The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

## II. BACKGROUND

---

[1] All defendants move to dismiss the case pursuant to Rule 23.1, while only the individual defendants move to dismiss pursuant to Rule 12(b)(6).

Nominal defendant AsiaInfo is a Delaware corporation and a provider of telecommunications software and information technology. (D.I. 1 at ¶ 10) AsiaInfo had a nine-member board of directors (hereinafter, the "Board") at the time of the alleged misconduct, comprising defendants Jian Ding ("Ding"), Xiwei Huang ("Huang"), Yugang Lu ("Lu"), David MacKenzie ("Mackenzie"), Thomas Manning ("Manning"), Sean Shao ("Shao"), Libin Sun ("Sun"), Suning Tian ("Tian"), and Zhang. (*Id.* at ¶¶ 11-19) Of the directors, both Zhang and Sun are employed by AsiaInfo, while the others are not. (*Id.* at ¶¶ 11, 13) Zhang is the President and CEO of AsiaInfo and Sun is the Executive Co-Chairman of the Board. (*Id.*) Defendant Liu is the Executive Vice President of AsiaInfo. (*Id.* at ¶ 20)

On February 19, 2011, the Board adopted the Plan, which "authorizes the [c]ompany to grant restricted stock awards, stock options, and other types of equity awards to the [c]ompany's executive officers, directors, and other employees." (*Id.* at ¶ 22) The shareholders approved the Plan on April 21, 2011. (*Id.*) Grants under the Plan are determined by the Compensation Committee. (*Id.* at ¶ 23) At the relevant time, directors Ding, Mackenzie, Tian, and Shao were on the Compensation Committee. (D.I. 1 at ¶ 21) According to the 2012 Proxy Statement, "Zhang . . . and . . . Sun [also] participate[d] in the discussions and decisions regarding salaries and incentive compensation for all of [AsiaInfo's] executive officers, except . . . regarding their own salary and incentive compensation." (D.I. 15, ex. A at 9)[2]

---

[2]The court can consider documents that are referenced in the complaint, including exhibits, on a motion to dismiss. *Tellabs*, 551 U.S. at 322; *Oshiver*, 38 F.3d at 1384-85 n.2.

2

On December 6, 2011, the Compensation Committee granted 750,000 stock options to Zhang and 110,000 stock options to Liu, ostensibly under the Plan.  (D.I. 1 at ¶ 24)  Halpert alleges that these actions directly contradicted Section 4.2 of the Plan, which states that "no individual may be granted within any one fiscal year of [AsiaInfo] one or more Awards intended to qualify as Performance-Based Compensation which in the aggregate are for more than (a) 100,000 shares . . . [or] up to 200,000 shares . . . to newly hired or newly promoted individuals."  (Id. at ¶ 26)  The Plan defines "performance-based compensation" as that which satisfies § 162(m) of the Internal Revenue Code ("IRC"), which generally disallows a tax deduction to public companies for compensation in excess of $1 million, but carves out an exception for performance-based compensation.  (Id. at ¶ 28)  Halpert avers that the grants to Zhang and Liu exceeded the Board's authority and harmed AsiaInfo and its shareholders.  (Id. at ¶¶ 30, 32)

## III. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 23.1

Pursuant to Federal Rule of Civil Procedure 23.1(b)(3), a shareholder bringing a derivative action must file a verified complaint that "state[s] with particularity:"

(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

(B) the reasons for not obtaining the action or not making the effort.

Therefore, Rule 23.1 provides a heightened pleading standard.  "Although Rule 23.1 provides the pleading standard for derivative actions in federal court, the substantive

3

rules for determining whether a plaintiff has satisfied that standard 'are a matter of state

law.'" *King v. Baldino*, 409 F. App'x 535, 537 (3d Cir. 2010) (citing *Blasband v. Rales*,

971 F.2d 1034, 1047 (3d Cir. 1992)). "Thus, federal courts hearing shareholders'

derivative actions involving state law claims apply the federal procedural requirement of

particularized pleading, but apply state substantive law to determine whether the facts

demonstrate [that] demand would have been futile and can be excused." *Kantor v.*

*Barella*, 489 F.3d 170, 176 (3d Cir. 2007).

> In this regard, the Delaware Supreme Court has explained that
> the entire question of demand futility is inextricably bound to issues of
> business judgment and the standard of that doctrine's applicability. . . . It
> is a presumption that in making a business decision the directors of a
> corporation acted on an informed basis, in good faith and in the honest
> belief that the action taken was in the best interests of the company.

*Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm*

*v. Eisner*, 746 A.2d 244, 253-54 (Del. 2000). "The key principle upon which this area

of . . . jurisprudence is based is that the directors are entitled to a **presumption** that

they were faithful to their fiduciary duties." *Beam ex. rel. Martha Stewart Living*

*Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004). Therefore, the burden is

on the party challenging a board's decision to establish facts rebutting the presumption

that the business judgment rule applies. *Levine v. Smith*, 591 A.2d 194, 205-06 (Del.

1991). By promoting the exhaustion of intracorporate remedies as an alternate dispute

resolution over immediate recourse to litigation, "the demand requirement is a

recognition of the fundamental precept that directors manage the business and affairs

of corporations." *Aronson*, 473 A.2d at 811-12.

## B. Federal Rule of Civil Procedure 12(b)(6)

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555; *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010)*; Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d. at 210-11. Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference.

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

The court's determination is not whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## IV. DISCUSSION

### A. Demand Futility

Halpert first alleges that demand on the Board would have been futile and was therefore excused. (D.I. 1 at ¶¶ 33-42) There are two tests that may establish demand futility. In cases challenging a board's action, demand is excused if a plaintiff raises a reasonable doubt that a majority of the board was disinterested and independent, or that the challenged acts were a result of the board's valid business judgment. *See Aronson*, 473 A.2d at 814. When a board did not act or refrained from acting, however, the plaintiff must "create a reasonable doubt that, as of the time the complaint [wa]s filed, the board of directors could have properly exercised its independent and

6

disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1993).

Halpert and defendants disagree as to which test applies to the instant case. While the *Aronson* test applies when half or more of the directors approved the transaction at issue, the *Rales* test is appropriate when less than half of the directors participated, i.e., when a committee's action is not attributed to the entire board. *See Ryan v. Gifford*, 918 A.2d 341, 352 (Del. Ch. 2007). Defendants aver that the *Rales* test applies because the Compensation Committee that "made the stock options awards challenged herein" consisted of four members: Ding, Mackenzie, Tian, and Shao. (D.I. 11 at 7) Since these four members constituted less than half of the nine-member board, defendants assert that the stock option grants were not the decision of the Board. *Id.* Halpert, however, alleges that, consistent with representations in the 2012 Proxy Statement, Sun also participated "in the discussions and decisions regarding salaries and incentive compensation," including the challenged stock option grants to Zhang and Liu.[3] (D.I. 15, ex. A at 9)

The court takes Halpert's allegation that Sun participated in granting the stock options at issue as true at the motion to dismiss stage, as his participation is explicitly noted in the 2012 Proxy Statement. Therefore, the court counts Sun as a director who participated in making the challenged grants. As Sun, together with the Compensation

---

[3]Zhang was also mentioned in the 2012 Proxy Statement as a participant in salary and incentive conversations, but the proxy statement notes that he did not participate in setting his own compensation, which would include his receipt of options being challenged herein.

7

Committee, constituted a majority of the Board, the *Aronson* analysis, rather than the *Rales* analysis, applies.

With this framework in mind, the Delaware Supreme Court has characterized the exercise of determining demand futility as deciding whether, under the particularized facts alleged, a reasonable doubt is created that (1) "the directors are disinterested and independent," or (2) "the challenged transaction was otherwise the product of a valid exercise of business judgment." *Id.* at 814; *see also Brehm*, 746 A.2d at 256 ("These prongs are in the disjunctive. Therefore, if either prong is satisfied, demand is excused."). "The spirit that clearly animates [this] test is a [c]ourt's unwillingness to set aside the prerogatives of a board of directors unless the derivative plaintiff has shown some reason to doubt that the board will exercise its discretion [in responding to demand] impartially and in good faith." *In re infoUSA, Inc. v. S'holders Litig.*, 953 A.2d 963, 986 (Del. Ch. 2007).

Under the first prong of *Aronson*, plaintiff avers that at least five members of the Board – Sun and the four members of the Compensation Committee – are interested or lack independence for reasons of substantial liability, special business relationships, and/or AsiaInfo's determination that they are not independent under NASDAQ standards. Since the instant case involves facts that raise a reasonable doubt that the stock option grants were a valid exercise of business judgment, the court need not address whether a majority of the Board lacks disinterestedness or independence. *See Sanders v. Wang*, Civ. No. 16640, 1999 WL 1044880, at *5 (Del. Ch. Nov. 8, 1999).

The second prong of *Aronson* examines whether a plaintiff's particularized allegations raise a reasonable doubt that the challenged transaction was the product of

8

a valid exercise of business judgment. *Aronson*, 473 A.2d 805 at 814. Defendants' business decisions are generally presumed valid. *Beam*, 845 A.2d at 1048. However, "[a] board's knowing and intentional decision to exceed the shareholders' grant of express (but limited) authority raises doubt regarding whether such a decision is a valid exercise of business judgment and is sufficient to excuse a failure to make demand." *Ryan*, 918 A.2d at 354; *see also Weiss v. Swanson*, 948 A.2d 433, 441 (Del. Ch. 2008) ("Allegations in a complaint rebut the business judgment rule where they support an inference that the directors intended to violate the terms of the stockholder-approved option plans.").

Halpert alleges that, since the Plan explicitly limits the number of stock options that can be granted to an individual, the Board "violated an express, unambiguous provision of the shareholder-approved . . . Plan." (D.I. 1 at ¶ 38) Defendants do not dispute that the annual ceiling on performance-based stock options per individual is 100,000 shares. Rather, they argue that the limitation applies only to "performance-based compensation" and that Halpert has not pled any facts to indicate that the stock options at issue in this case were intended or required under the terms of the Plan to be performance-based compensation. (D.I. 11 at 11) Specifically, defendants assert that "the structure, types of awards, nature, and objectives of the Plan are 'more complex, more intricate, and more nuanced' than [Halpert] alleges" and, thus, the challenged stock options may not, in fact, have been performance-based compensation subject to the 100,000 stock option limitation. (*Id.*)

Contrary to defendant's assertion, Halpert has pled particular facts to raise a reasonable inference that the challenged grants were performance-based

9

compensation. Halpert avers that the challenged stock options were granted under the Plan and intended to qualify as "tax deductible 'Performance-Based Compensation' as defined in the . . . Plan." (D.I. 1 at ¶¶ 24, 28) Moreover, the 2012 Proxy Statement provides that "awards issued under [AsiaInfo's] stock incentive plans (including stock options . . .) have been structured so that any taxable compensation derived . . . should not be subject to . . . deductibility limitations" under § 162(m) of the IRC. (*Id.* at ¶ 28; D.I. 5, ex. A) Any "compensation under an Award that satisfies the requirements of Section 162(m)" paid to a CEO, CFO, or any of the three most highly compensated executive officers – which includes Zhang and Liu – is "performance-based compensation." (D.I. 1 at ¶ 27) Therefore, under the well-pled facts and AsiaInfo's own characterization of the challenged grants, Halpert has established a prima facie case that the Board exceeded its authority by awarding more stock options than authorized under the Plan.

Defendants submit that this court's decision in *Freedman v. Redstone*, Civ. No. 12-1052, 2013 WL 3753426 (D. Del. July 16, 2013), supports their argument that the Board's conduct was an exercise of valid business judgment under *Aronson*. (D.I. 19) In *Freedman*, the court found that the terms of the shareholder-approved plan at issue were not so unambiguous as to give rise to an inference, under the undisputed facts, that a clear violation occurred. Without a particularized pleading that the board acted knowingly or intentionally, the alleged violation, by itself, did not give rise to a reasonable doubt that the board's action was a product of valid business judgment. *Freedman*, 2013 WL 3753426; *see also Ryan*, 918 A.2d at 354 (requiring a "knowing and intentional decision to exceed a shareholders' grant of authority"); *Weiss*, 948 A.2d

10

at 441 (requiring "an inference that the directors intended to violate" a shareholder-approved plan).

The instant case is distinguishable from *Freedman* because the Plan's limitation on the Board's authority is undisputed, and the reasonable inference of a clear violation, given the uncontroverted facts, is much stronger. The pleadings at bar are analogous to those in *Sanders*, in which executives were granted at least 9.5 million more shares than authorized by a shareholder-approved plan. *Sanders*, 1999 WL 1044880, at *1-*2. The *Sanders* court held that, when "it is clear from the uncontroverted facts that the number of shares the board actually awarded exceeded its limitation," the facts raise doubt that the board's actions were the result of a valid exercise of business judgment. *Id.* at *5. Although the *Sanders* court did not mention whether or not the plaintiffs alleged a knowing or intentional violation, it appears that the challenged transaction was such a clear and undisputed violation that the violation, alone, created a reasonable doubt that the board acted without knowledge. *See id.* at *5 ("[T]he provision . . . [was] not ambiguous and it [was] clear from the uncontroverted facts that the number of shares the board actually awarded exceeded its limitation of six million shares."); *see also Landy v. D'Alessandro*, 316 F. Supp. 2d 49, 65-66 (D. Mass. 2004) (discussing the import of *Sanders*).

Here, the Plan contains a limitation on the number of stock options that the Board can grant per year, similar to the provision in *Sanders*. Given the particularized pleadings and AsiaInfo's own characterization in the 2012 Proxy Statement that the challenged grants were performance-based compensation, Halpert has established a prima facie case that the Board exceeded its authority. Such a prima facie showing of

11

a clear violation, alone, gives rise to a reasonable doubt that the challenged grants were a valid excuse of business judgment. Accordingly, demand is excused under the second prong of *Aronson*.

## B. Federal Rule of Civil Procedure 12(b)(6)

Defendants also argue that Halpert's allegations of breach of fiduciary duty, waste of corporate assets, and unjust enrichment fail to state a claim. The court addresses each cause of action in turn.

### 1. Breach of fiduciary duty

To bring an action premised on the theory that directors breached their fiduciary duties, a plaintiff must allege that directors intentionally engaged in bad faith or in self-interested conduct that is not immunized by the exculpatory charter provision permitted by 8 Del. C. § 102(b)(7).[4] *McMillan v. Intercargo Corp.*, 768 A.2d 492, 495 (Del. Ch. 2000); *see also Malpiede v. Townson*, 780 A.2d 1075, 1094 (Del. 2001).

Halpert alleges that all defendants breached their fiduciary duty to AsiaInfo and to the shareholders by exceeding the authority granted to them under the Plan and not acting in good faith. (D.I. 1 at ¶¶ 44-45) The court has found that, for purposes of demand excusal, Halpert's particularized pleadings give rise to a reasonable doubt that the Board's granting of stock options to Zhang and Liu was a valid exercise of business

---

[4]Pursuant to 8 Del. C. § 102(b)(7), the certificate of incorporation may contain:

A provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; . . . or (iv) for any transaction from which the director derived an improper personal benefit.

judgment. Because the standard under Rule 12(b)(6) is less stringent than that for
pleading factual particularity under Rule 23.1, "where [a] plaintiff alleges particularized
facts sufficient to prove demand futility under the second prong of *Aronson*, that plaintiff
a fortiori rebuts the business judgment rule for the purpose of surviving a motion to
dismiss pursuant to Rule 12(b)(6)." *Ryan*, 918 A.2d at 357; *see also Weiss*, 948 A.2d
at 448; *McPadden v. Sidhu*, 964 A.2d 1262, 1270 (Del. Ch. 2008). Therefore, Halpert
sufficiently pleads a breach of fiduciary duty.

## 2. Waste of corporate assets and unjust enrichment

Halpert further alleges that defendants caused a waste of corporate assets and
unjust enrichment. (D.I. 1 at ¶¶ 51, 58) A claim of waste refers to "an exchange of
corporate assets for consideration so disproportionately small as to lie beyond the
range at which any reasonable person might be willing to trade.'" *White v. Panic*, 783
A.2d 543, 554 (Del. 2001) (quoting *Brehm*, 746 A.2d at 263). "To prevail on a waste
claim . . . , the plaintiff must overcome the general presumption of good faith by
showing that the board's decision was so egregious or irrational that it could not have
been based on a valid assessment of the corporation's best interests." *Id.* at 554 n. 36.
"[T]he decision must go so far beyond the bounds of reasonable business judgment
that its only explanation is bad faith." *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416
F.3d 229, 238 (3d Cir. 2005). "Unjust enrichment is the unjust retention of a benefit to
the loss of another, or the retention of money or property of another against the
fundamental principles of justice or equity and good conscience." *Nemec v. Shrader*,
991 A.2d 1120, 1130 (Del. 2010) (citation omitted) (internal quotation marks omitted). It
requires: "(1) an enrichment, (2) an impoverishment, (3) a relation between the

13

enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy at law." *Id.*

Halpert alleges that the Board caused AsiaInfo to "waste valuable corporate assets by granting the . . . awards in excess of what was authorized under the . . . Plan" and that the directors acted in a manner that "no director of ordinary sound business judgment" would act by awarding the stock options in question. (D.I. 1 at ¶ 51) Halpert further alleges that defendants Zhang and Liu were unjustly enriched, at the expense of AsiaInfo, through the receipt of unauthorized personal financial benefits. (*Id.* at ¶¶ 56, 58) Halpert avers that to allow the officers to retain the benefits "would be unconscionable and against fundamental principles of justice, equity, and good conscience." (*Id.* at ¶ 57) Defendants assert that Halpert's allegations of waste and unjust enrichment fail to state a claim because Halpert has not alleged plausible facts that the stock options were granted without justification. (*Id.* at 20)

The court has found that Halpert's complaint sufficiently alleges that the Board violated an express provision of the Plan. The alleged breach of fiduciary duty calls into question whether the challenged stock option grants could have been in AsiaInfo's best interests and whether they caused Zhang and Liu to be unjustly enriched. *Sanders*, 1999 WL 1044880 at *10. At the motion to dismiss stage, the court cannot conclude that there is no conceivable set of circumstances under which defendants unjustifiably retained something of value. Moreover, the court cannot conclude at this time that Halpert's breach of fiduciary duty claims provide an adequate remedy at law to bar Halpert from also asserting unjust enrichment. In fact, the Delaware Court of Chancery has held that a breach of fiduciary duty, if successful, may help a plaintiff prove a claim

14

for unjust enrichment. *See Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 394 (Del. Ch. 1999) ("If Plaintiffs succeed on the merits of their breach of fiduciary duty and aiding and abetting claims, it is likely they will also be able to prove that neither [defendant] can retain any benefit resulting from the disputed transaction 'justifiably' or in accordance with 'the fundamental principles of justice or equity and good conscience.'"). Therefore, Halpert sufficiently pleads a claim for waste and unjust enrichment, and defendants' motion to dismiss under Rule 12(b)(6) is denied in this regard.

## V. CONCLUSION

For the foregoing reasons, the court denies defendants' motion to dismiss under Rule 23.1 and Rule 12(b)(6). (D.I. 11) An appropriate order shall issue.

15