IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHILIP HALPERT, derivatively on behalf of ASIAINFO-LINKAGE, INC., <br><br> Plaintiff, <br><br> v. <br><br> STEVE ZHANG, JIAN DING, LIBIN SUN, SEAN SHAO, YUNGANG LU, DAVIN A. MACKENZIE, THOMAS J. MANNING, SUNING TIAN, XIWEI HUANG, and GUOXIANG LIU, <br><br> Defendants, <br><br> -and- <br><br> ASIAINFO-LINKAGE, INC., <br><br> Nominal Defendant. | Civil Action No. 12-1339-SLR-SRF |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this shareholder derivative action brought under Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(a) *et seq.*, are the following motions: (1) nominal defendant AsiaInfo-Linkage, Inc.'s ("AsiaInfo") motion to stay (D.I. 37); (2) the motion to dismiss the complaint for lack of standing filed by defendants Jian Ding ("Ding"), Xiwei Huang ("Huang"), Guoxiang Liu ("Liu"), Yungang Lu ("Lu"), Davin A. Mackenzie ("Mackenzie"), Thomas J. Manning ("Manning"), Sean Shao ("Shao"), Libin Sun ("Sun"), Suning Tian ("Tian"), and Steve Zhang ("Zhang") (collectively, the "Individual Defendants") (D.I. 52); and (3) plaintiff Philip Halpert's ("Halpert") motion for leave to file an amended complaint (D.I. 57). For the following reasons, I recommend that the court deny

AsiaInfo's motion to stay as moot, grant the Individual Defendants' motion to dismiss, and deny Halpert's request to file an amended complaint.

## II. BACKGROUND

On December 6, 2011, AsiaInfo's Board of Directors (the "Board") approved the grant of 750,000 stock options to President and Chief Executive Officer Zhang, and 110,000 stock options to Executive Vice President Liu, under AsiaInfo's 2011 Stock Incentive Plan (the "Plan"). The Plan provides that no individual may be granted stock option awards intended to qualify as performance-based compensation in excess of 100,000 shares. (D.I. 58, Ex. 1 at ¶ 27) Halpert filed a derivative complaint on behalf of AsiaInfo and against the Individual Defendants on October 17, 2012, alleging that the Individual Defendants knowingly violated the terms of the Plan by awarding Zhang and Liu stock options that exceeded the maximum amount allowable under the Plan, and asserting derivative causes of action for breach of fiduciary duty, waste of corporate assets, and unjust enrichment. (D.I. 1) On January 18, 2013, the Individual Defendants moved to dismiss for failure to state a claim upon which relief could be granted. (D.I. 10) The court denied the motion to dismiss on August 8, 2013. (D.I. 20; D.I. 21) On October 22, 2013, Halpert filed a motion for judgment on the pleadings, which the court denied on June 6, 2014. (D.I. 34; D.I. 66-67)

In January 2012, AsiaInfo announced that it was considering a proposal to take the company private. (D.I. 60, Ex. A) On May 13, 2013, AsiaInfo announced a proposed merger transaction in which Zhang, Tian, Ding, and CITIC Capital Partners would acquire AsiaInfo (the "Merger"). (D.I. 58, Ex. 1 at ¶ 32) The Board amended Zhang and Liu's employment contracts to give them the right to exchange all of their stock options for cash after the closing of the Merger. (*Id.* at ¶ 33) On November 18, 2013, AsiaInfo issued a Definitive Proxy Statement (the

"2013 Proxy") providing shareholders with the terms and background of the transaction, explaining that the offers to acquire AsiaInfo were made on a per share basis. (D.I. 60, Ex. B) A majority of AsiaInfo's shareholders approved the Merger, and on January 14, 2014, the Merger officially closed and AsiaInfo became a privately held company. (D.I. 58, Ex. 1 at ¶¶ 32, 34) Subsequently, Zhang and Liu's stock options were converted into an option to purchase an equal number of shares in the new company or the cash equivalent of that amount.

### III. LEGAL STANDARD

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, a party may amend its pleading "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." The decision to grant or deny leave to amend lies within the discretion of the court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The Third Circuit has adopted a liberal approach to the amendment of pleadings. *See Dole v. Arco*, 921 F.2d 484, 487 (3d Cir. 1990). In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party. *See Foman*, 371 U.S. at 182; *In re Burlington*, 114 F.3d at 1434.

An amendment is futile if it is frivolous, fails to state a claim upon which relief can be granted, or "advances a claim or defense that is legally insufficient on its face." *Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006). The standard for assessing futility of amendment under Fed. R. Civ. P. 15(a) is the same standard of legal sufficiency applicable under Fed. R. Civ. P. 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Specifically, the amended pleading must fail to state a claim upon which relief could be granted even after the

district court "tak[es] all pleaded allegations as true and view[s] them in a light most favorable to the plaintiff." *Winer Family Trust v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007); *see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010).

## IV. DISCUSSION

### A. Motion for Leave to File Amended Complaint

In support of the motion to amend, Halpert concedes that the consummation of the Merger extinguished his derivative claims, but alleges that he should be able to assert direct claims for breach of contract, conversion, and unjust enrichment based on the award of excess stock options to Zhang and Liu in contravention of the terms of the Plan. (D.I. 58 at 5-9) In response, the Individual Defendants contend that Halpert's amended causes of action are derivative in nature, and Halpert's efforts to recast his derivative claims as direct claims are futile in light of Delaware Supreme Court precedent. (D.I. 59 at 4-10)

To determine whether a claim is direct or derivative, the court must consider "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). Under Delaware law, the same set of facts may inflict both derivative and direct harm on a shareholder, generating both a direct claim and a derivative claim. *Protas v. Cavanagh*, C.A. No. 6555-VCG, 2012 WL 1580969, at *5 (Del. Ch. May 4, 2012); *MCG Capital Corp. v. Maginn*, 2010 WL 1782271, at *13 (Del. Ch. May 5, 2010). However, a claim of direct injury "must be independent of any alleged injury to the corporation." *Tooley*, 845 A.2d at 1039. The court must "independently examine the nature of the wrong alleged and any potential relief to

4

make its own determination" regarding the nature of the claims. *Id.* at 1035 (internal quotation marks omitted).

"Delaware courts have long recognized that actions charging 'mismanagement which depress[] the value of stock [allege] a wrong to the corporation; *i.e.*, the stockholders collectively, to be enforced by a derivative action.'" *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 353 (Del. 1988) (internal citations omitted). As the Delaware Supreme Court has explained,

> [s]uch claims are not normally regarded as direct, because any dilution in value of the corporation's stock is merely the unavoidable result (from an accounting standpoint) of the reduction in the value of the entire corporate entity, of which each share of equity represents an equal fraction. In the eyes of the law, such equal "injury" to the shares resulting from a corporate overpayment is not viewed as, or equated with, harm to specific shareholders individually.

*Gentile v. Rossette*, 906 A.2d 91, 99 (Del. 2006); *see also Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008). Because the devaluation of stock is shared collectively by all the shareholders, rather than independently by any individual shareholder, the wrong alleged is "entirely derivative in nature."[1] *Kramer*, 546 A.2d at 353.

Halpert's amended causes of action fail to meet the *Tooley* standard for direct claims because the harm alleged, namely, the dilution of share values, was suffered by the corporation and not by the individual shareholders. *See Protas*, 2012 WL 1580969, at *6 ("Claims of overpayment naturally assert that the corporation's funds have been wrongfully depleted, which, though harming the corporation directly, harms the stockholders only derivatively so far as their

---

[1] The Delaware Supreme Court has recognized a narrow exception to this rule in the case of allegedly excessive stock awards made to a controlling stockholder. *See Gentile*, 906 A.2d at 100. Specifically, when the shares representing the overpayment embody both economic value and voting power, "the harm resulting from the overpayment is not confined to an equal dilution of the economic value and voting power of each of the corporation's outstanding shares. A separate harm also results: an extraction from the public shareholders, and a redistribution to the controlling shareholder, of a portion of the economic value and voting power embodied in the minority interest." *Id.* This exception is not applicable to the facts of the present case.

5

stock loses value."). Specifically, the proposed amended complaint describes the alleged harm to the shareholders as follows:

> 38. Through their ownership of AsiaInfo shares, Plaintiff and every other member of the Class had individual property interests in their respective share of the consideration offered by Skipper Limited in the Merger. These property interests were to the highest per share value, measured as a percentage of the total sum the Purchasers were willing to spend on the Merger. The value of Plaintiff's property interest (and the property interest of each Class member) was thus directly tied to the number of shares issued by AsiaInfo that were subsequently converted into cash upon closing of the Merger.
> 39. The Purchasers were ultimately willing to pay up to a given cash value to acquire the Company irrespective of the number of shares outstanding. The more shares of AsiaInfo outstanding, the less the Purchasers would pay for each share and the less each member of the Class would receive.
> 40. Because the December 2011 Awards, including the Excess Stock Options, increased the total number of issued shares, the overall per-share consideration for the Merger was necessarily less than each shareholder otherwise would have received if the Director Defendants had not wrongfully granted those awards.

(D.I. 58, Ex. A at ¶¶ 38-40) Regardless of whether causes of action for breach of contract, conversion, and unjust enrichment may be brought directly under certain circumstances, the harm underlying each cause of action in the present case is the reduction in per share value of the stock caused by the alleged overpayment of stock options to Zhang and Liu.[2] (D.I. 58, Ex. A at ¶¶ 56, 61, 67) *Tooley* and its progeny inform the court that Halpert's allegations of diluted stock value are fundamentally derivative, and cannot constitute a direct cause of action. *See Feldman*, 951 A.2d at 732 (holding that equal injury to the company's shares resulting from a corporate overpayment cannot constitute harm to specific shareholders individually); *Kramer*, 546 A.2d at 355 (following a cash-out merger, standing to pursue derivative claims passes from the shareholders to the acquirer of the company).

---

[2] Halpert alleges that the underlying harm is the violation of the shareholder-approved compensation plan itself. (D.I. 62 at 6) However, the language of the amended complaint identifies the unauthorized award of stock options as the breach, (D.I. 58, Ex. A at ¶ 56), and the dilution of share values as the alleged harm, (*Id.* at ¶¶ 40, 41, 54, 57).

6

The facts of this case are analogous to the circumstances set forth in the Delaware Supreme Court's decision in *Feldman v. Cutaia.* 951 A.2d 727 (Del. 2008). *Feldman* involved challenges to awards made under a shareholder-approved incentive plan following a merger that was approved by the shareholders. Focusing on the nature of the harm alleged as opposed to the plaintiff's characterization of the causes of action, the Delaware Supreme Court determined that the stockholders' claims were derivative, and casting the same fundamental harm in a slightly different way was insufficient to transform the derivative injury into a direct one. *See Feldman*, 951 A.2d at 730. Specifically, the Delaware Supreme Court determined that the diluted share values gave rise to a derivative cause of action:

> Where all of a corporation's stockholders are harmed and would recover *pro rata* in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature. The mere fact that the alleged harm is ultimately suffered by, or the recovery would ultimately inure to the benefit of, the stockholders does not make a claim direct under *Tooley*. In order to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large.

*Feldman*, 951 A.2d at 733. The Delaware Supreme Court expressly noted that "creative attempt[s] to recast the derivative claim for dilution . . . by alleging the same fundamental harm in a slightly different way . . . is disfavored." *Id.*

Halpert's reliance on the Court of Chancery's recent decision in *Allen v. El Paso Pipeline GP Co.*, 90 A.3d 1097 (Del. Ch. 2014), is insufficient to overcome the application of the Delaware Supreme Court's decisions in *Kramer* and *Feldman* to the present matter. The *Allen* court did not distinguish or address those Delaware Supreme Court decisions holding that allegations of equal injury to all of a corporation's shares state a claim that is solely derivative.

In *Allen*, the plaintiff claimed a direct injury in the form of a breach of the limited partners' contractual rights under a limited partnership agreement. The agreement required the

General Partner to follow certain alternate paths to achieve compliance with the agreement in order to participate in a transaction posing a conflict of interest for the General Partner. Applying a *Tooley* analysis, the Court of Chancery determined that the facts were more in line with "[t]he decisions [which] recognize that when the certificate of incorporation or bylaws contain a protective provision for the benefit of the stockholders, such as a class vote, consent right, notice right, or other procedural requirement, then the stockholders can sue directly to enforce it." *Id.* at 1107. Contrary to Halpert's argument in the instant case, *Allen* did not expansively hold that all suits by a shareholder to enforce contractual rights constitute a direct claim.

Halpert concedes that his derivative claims cannot survive following the Merger. (D.I. 58 at 3) ("As Plaintiff conceded in his brief in opposition to the motion to dismiss, the derivative claims asserted in his original Complaint have been extinguished by the Merger."). Therefore, amendment would be futile. For the foregoing reasons, I recommend that the court deny the motion to amend the complaint.

### B. Motion to Dismiss for Lack of Standing

Halpert acknowledges that his derivative claims cannot survive following consummation of the Merger. (D.I. 55 at 4-7) ("The closing of the Merger simply cut off Plaintiff's ability to seek redress for his injury through the prosecution of derivative claims. It did not eliminate the injury nor does it deprive Plaintiff of the right to pursue redress through the assertion of direct claims.") I recommend that the court grant the motion to dismiss for lack of standing in light of Halpert's concession that the derivative claims cannot survive following consummation of the Merger, and this court's recommendation that Halpert has failed to plead a direct cause of action. *See* § IV.A, *supra*.

### C. Motion to Stay

I recommend that the court deny AsiaInfo's motion to stay as moot. The purpose of the motion, which was filed on October 23, 2013, was to request the entry of a 90-day stay pending consummation of the Merger. (D.I. 37) More than 90 days has passed since the filing of the motion, and the Merger is complete. Therefore, the motion is moot.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court deny AsiaInfo's motion to stay as moot, grant the Individual Defendants' motion to dismiss, and deny Halpert's request to file an amended complaint.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10) pages each.

The parties are directed to the Court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available at http://www.ded.uscourts.gov/court-info/local-rules-and-orders/general-orders.

Dated: April 1, 2015

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE